UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY JEROME WOMACK, | No. 2:15-cv-0533 KJN P |
| Plaintiff, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| J. WINDSOR, et al., | |
| Defendants. | |

I. Introduction

    Plaintiff is a state prisoner, proceeding without counsel. He filed a civil rights action pursuant to 42 U.S.C. § 1983. On March 20, 2015, plaintiff consented to proceed before the undersigned for all purposes. See 28 U.S.C. § 636(c). Pending before the court is defendants' motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the undersigned recommends that the motion be granted in part and denied in part.

II. Legal Standard for Motion to Dismiss

    Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89

(2007), and construe the pleading in the light most favorable to the plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999). Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Furthermore, a claim upon which the court can grant relief must have facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Attachments to a complaint are considered to be part of the complaint for purposes of a motion to dismiss for failure to state a claim. Hal Roach Studios v. Richard Reiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). The court has an obligation to construe such pleadings liberally. Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (*en banc*). However, the court's liberal interpretation of a pro se complaint may not supply essential elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

III.   Plaintiff's Claims

Plaintiff alleges that in May of 2009, while he was housed at New Folsom State Prison, orthopedic surgeon Eric Giza determined that plaintiff's chronically-damaged left ankle needed a second surgery, "denovo cartilage implantation," otherwise plaintiff would be in constant pain, and that limping on the ankle would cause further damage. (ECF No. 1 at 1.) New Folsom medical staff opted to put plaintiff on a pain management medication of methadone, which plaintiff claims is one of only two drugs that would relieve the unbearable, excruciating pain

2

plaintiff suffered twenty-four hours a day, every day.  Plaintiff agreed to this pain management protocol because he "was not enthusiastic about the denovo cartilage implantation procedure," which he describes as "brutal."  (ECF No. 1 at 2.)

However, on March 18, 2014, plaintiff was transferred to High Desert State Prison ("HDSP"), where Dr. J. Windsor explained that HDSP medical staff has a policy that no inmate, regardless of their pain situation, will be prescribed methadone or morphine.  In response, plaintiff immediately sought to schedule the denovo cartilage implantation procedure, but he alleges that Dr. Windsor failed to schedule such surgery, and also failed to provide plaintiff adequate pain medication.  (ECF No. 1 at 4-5.)  On March 2, 2015, Dr. Lankford told plaintiff that he would not schedule the second surgery for plaintiff because of his high blood pressure, and plaintiff contends that Dr. Lankford refused to provide plaintiff with adequate pain medication.  Finally, plaintiff alleges that Dr. Lee and CEO T. Mahoney personally became aware of plaintiff's need for the second surgery and adequate pain medication during the administrative appeals process, specifically 602 appeal Log Nos. HDSP HC 14028252 and HDSP HC 14028473, yet both failed to take steps to ensure that plaintiff either received the second surgery or adequate pain medication.  (ECF No. 1 at 5.)  Plaintiff states that he has been requesting his surgery at HDSP for the past twelve months, to no avail, and that he continues to "suffer unbearable, excruciating pain every single day."  (ECF No. 1 at 6.)

IV.  Defendants' Motion to Dismiss

Defendants contend that plaintiff's complaint should be dismissed because a difference in medical opinion between professionals fails to state an Eighth Amendment violation; plaintiff cannot establish supervisory liability under the facts pled; and defendants are entitled to qualified immunity.  Defendants provide copies of plaintiff's administrative appeals referenced in the complaint.  Although plaintiff does not dispute the authenticity of such appeals (ECF No. 20 at 4), he does contend that plaintiff omitted medical documentation from both appeals (ECF No. 20 at 10).

////

////

3

V. <u>Deliberate Indifference to Serious Medical Needs</u>

In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106, 97 S. Ct. 285, 50 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. <u>Wilson v. Seiter</u>, 501 U.S. 294, 299 (1991); <u>McKinney v. Anderson</u>, 959 F.2d 853, 854 (9th Cir. 1992) (on remand). The requisite state of mind for a medical claim is "deliberate indifference." <u>Hudson v. McMillian</u>, 503 U.S. 1, 5 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Indications that a prisoner has a serious need for medical treatment are the following: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. See, e.g., <u>Wood v. Housewright</u>, 900 F.2d 1332, 1337-41 (9th Cir. 1990) (citing cases); <u>Hunt v. Dental Dept.</u>, 865 F.2d 198, 200-01 (9th Cir. 1989). <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059-60 (9th Cir. 1992), <u>overruled on other grounds</u>, <u>WMX Technologies v. Miller</u>, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994), the Supreme Court established a very demanding standard for "deliberate indifference." Negligence is insufficient. <u>Farmer</u>, 511 U.S. at 835. It is not enough that a reasonable person would have known of the risk or that a defendant should have known of the risk. <u>Id.</u> at 842. Rather, deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to inmate health and safety." <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal citation omitted) (emphasis added). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006) (citations omitted). A difference of opinion between an inmate and prison medical personnel, or between medical

4

professionals, regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi, 391 F.3d at 1058.

VI. Discussion

Defendants' motion does not challenge that plaintiff has pled sufficient facts to allege a serious medical need. Rather, the issue here is whether plaintiff has pled sufficient facts to demonstrate that defendants were deliberately indifferent to plaintiff's serious medical needs.

Defendants argue that plaintiff's claims amount to a disagreement over treatment or, at most, medical negligence, neither of which states a claim of deliberate indifference. While the court agrees that plaintiff does not have a constitutional right to choose his own medication and medical negligence is not deliberate indifference, the Eighth Amendment does protect plaintiff from the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Here, plaintiff alleges that he suffers from a serious medical condition, and that defendants' decision to change his pain management treatment was made for non-medical reasons. Specifically, plaintiff alleges that defendant Dr. Windsor stated that HDSP medical staff have a policy that no inmate regardless of their pain situation will be prescribed methadone or morphine. (ECF No. 1 at 4.) Plaintiff avers that on at least four separate occasions, Dr. Windsor gave plaintiff "inadequate pain medications." (ECF No. 1 at 5.) Plaintiff also alleges that Dr. Lankford prescribed "inadequate pain medication." (ECF No. 1 at 5.) Finally, plaintiff claims that he suffers "unbearable, excruciating pain every single day!" (ECF No. 1 at 6.)

Defendants also argue that plaintiff's claims of deliberate indifference are undermined by statements made in plaintiff's administrative appeals. Specifically, defendants contend that Dr. Windsor prescribed plaintiff alternative medications to treat plaintiff's pain. However, the provision of alternative medications, as well as their efficacy, raise potential questions of fact that are not properly resolved on a motion to dismiss brought pursuant to Rule 12(b)(6).[1]

---

[1] Although plaintiff conceded that the appeals filed by defendants are "authentic," he does not concede that he agrees with all of the statements contained therein. For example, plaintiff denies that he told anyone that he requested to hold off on the surgery. (ECF No. 20 at 7.) There is no indication that plaintiff has adopted as true statements not made by plaintiff in the administrative

5

Moreover, a "prisoner need not prove that he was completely denied medical care. Rather, he can establish deliberate indifference by showing that officials intentionally interfered with his medical treatment." Lopez v. Smith, 203 F.3d 1122, 1132 (9th Cir. 2000) (citations omitted) (*en banc*). Here, plaintiff alleges that since 2009 his pain was effectively managed by methadone while he was housed at New Folsom Prison. (ECF No. 1 at 4.) But after his transfer to HDSP, plaintiff alleges that defendant Dr. Windsor changed his approved pain management treatment for purely non-medical reasons, then prescribed him inadequate pain medication. Plaintiff's pain complaints included in his administrative appeals confirm his allegation that the prescribed medications were ineffective. (ECF No. 19-1 at 12, 14-17) (June 22, 2014, plaintiff "sought appropriate pain medication," plaintiff was prescribed methadone or morphine for past seven years at New Folsom, and methadone at Salinas Valley State Prison, and plaintiff had tried all other medications "but they simply don't work"); August 6, 2014, plaintiff suffered "24 hour pain"); October 1, 2014, "leaving me in constant unbearable pain;" "suffering severe pain.") December 1, 2014, plaintiff "continues to complain of left ankle pain").)

Plaintiff's appeals confirm that defendants Lee and Mahoney were aware that plaintiff's complaint that the pain medication being substituted for methadone was ineffective since they responded to plaintiff's appeal raising that claim, and both of their appeal responses note that plaintiff would be continued on Nortriptyline for chronic pain (ECF No. 18, 20), which plaintiff claimed was ineffective in relieving his pain. Even if, in addressing plaintiff's appeals, defendants Lee and Mahoney relied on the opinions of other doctors, arguably such opinions were inferior because the decision to deny plaintiff methadone was not based on a determination that methadone was medically unnecessary but because HDSP policy did not allow such prescription. See Hamilton v. Endell, 981 F.2d 1062, 1067 (9th Cir. 1992) ("By choosing to rely upon a

---

appeals. See Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 674 (2nd Cir. 1995) (Rule 10(c) does not require "plaintiff to adopt as true the full contents of any document attached to a complaint or adopted by reference."); see also Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449, 455 (7th Cir. 1998) ("To conclude summarily, however, that letters written by Century Center represent the truth with regard to the defendants' intent simply because NIGOS attached them to its complaint for reasons unrelated to their truthfulness is inappropriate.").

1 medical opinion which a reasonable person would likely determine to be inferior, the prison
2 officials took actions which may have amounted to the denial of medical treatment, and the
3 'unnecessary and wanton infliction of pain.'"), abrogated in part on other grounds by Estate of
4 Ford v. Ramirez-Palmer, 301 F.3d 1043, 1045 (9th Cir. 2002). Defendants' argument that
5 defendant Mahoney, who is not a medically-trained doctor, and could not overrule their opinions
6 or treatment, fails for the same reason. Roberts v. Blades, 2014 WL 7149576 (D. Idaho Dec. 15,
7 2014) (prisoner alleged the warden had notice of prisoner's ongoing problems and did nothing to
8 solve his problem).

> Non-medical prison personnel are generally entitled to rely on the opinions of medical professionals with respect to appropriate medical treatment of an inmate. However, if "a reasonable person would likely determine [the medical treatment] to be inferior," the fact that an official is not medically trained will not shield that official from liability for deliberate indifference. Snow v. McDaniel, 681 F.3d 978, 986 (9th Cir. 2012);[fn9] see also McGee v. Adams, 721 F.3d 474, 483 (7th Cir. 2013) (stating that non-medical personnel may rely on medical opinions of health care professionals unless "they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner.") (internal quotation marks omitted). In addition, if an inmate continues to complain after he has had treatment, officials who ignore the continuing complaints may be deliberately indifferent. Cooper v. Dyke, 814 F.2d 941, 945-46 (4th Cir. 1987).
>
> [fn9: Snow was overruled in part on other grounds by Peralta v. Dillard, 744 F.3d 1076 (2014) (medical provider who lacked authority over budgeting decisions was entitled to a jury instruction that the jury could consider, for purposes of the claim for damages against him personally, whether prison resources were such that it was impossible for him to provide the care the inmate needed, but prospective injunctive relief claims against such a defendant in his official capacity remain viable).]

22 Roberts, 2014 WL 7149576, at *4)
23    For all of the above reasons, defendants' motion to dismiss the complaint based on
24 plaintiff's allegations concerning inadequate pain medication should be denied.
25    At the motion to dismiss stage, the court must accept as true plaintiff's allegations that
26 defendants failed to provide plaintiff with the pain medication that previously worked for years
27 based on a policy at HDSP, rather than determining methadone was not an appropriate medication
28 for plaintiff based on his serious medical needs. See Chess v. Dovey, 790 F.3d 961 (9th Cir.

2015) (Chess claimed that defendants denied him "effective pain medication; specifically, that defendants purportedly discontinued [his] use of methadone solely because a High Desert State Prison policy prohibit[ed] general-population inmates from receiving that medication.").

As to plaintiff's claim concerning denial of surgery, the court agrees with defendants that inmates do not have a constitutional right to demand surgery. However, because plaintiff has alleged sufficient facts to support claims as to all defendants except CEO Mahoney, defendants' motion to dismiss should be denied as to all defendants except Mahoney, for the following reasons.

In his verified complaint, plaintiff avers that in May of 2009, Dr. Eric Giza, a U.C. Davis orthopedic surgeon, opined that plaintiff required a second ankle surgery, a "denovo cartilage implantation." (ECF No. 1 at 3, 4.) Plaintiff alleges that on March 2, 2015, Dr. Lankford told plaintiff that the doctor would not schedule denovo cartilage implantation surgery due to plaintiff's high blood pressure, and that Dr. Windsor did not schedule or insure that plaintiff was provided with the denovo cartilage implantation surgery. Plaintiff avers that defendants Dr. Lee and CEO Mahoney were put on notice by way of plaintiff's appeals Log Nos. 14028252 and 14028473, that plaintiff was requesting surgery. (ECF No. 1 at 5.)

Defendants contend that their failure to provide the denovo cartilage implantation surgery cannot be deemed deliberate indifference where plaintiff expressed his ambivalence about receiving the surgery. However, in the instant complaint, plaintiff avers that he initially chose not to have the surgery because he thought the surgery sounded "brutal," and his pain was managed by methadone. Once he was transferred to HDSP, and methadone would not be prescribed, plaintiff began pursuing the surgery anew. Indeed, although plaintiff again expressed his ambivalence on September 10, 2014, in appeal Log No. HDSP HC 14028473, he also states that he is "willing to participate in this extreme surgery . . . due to [his] everyday high level pain activity." (ECF No. 19-1 at 27.) Defendants argue that plaintiff again wanted to hold off on the surgery, as noted in Dr. Lee's statement in the first level appeal response in Log No. HDSP HC 14028473, on November 13, 2014. (ECF No. 19-1 at 29.) But plaintiff disputes that he ever told anyone he wanted to hold off on surgery. (ECF No. 20 at 7.) Indeed, in expressing his

dissatisfaction with Dr. Lee's first level appeal response, plaintiff stated, "I never ever at no point on the date of 9/30/14 told Doctor Windsor that I wanted to hold off on my surgery, she is flat out lying." (ECF No. 19-1 at 26.)

Defendants argue that defendant Lankford is entitled to dismissal because the doctor evaluated plaintiff's condition and determined that it was medically inadvisable to conduct the surgery in light of plaintiff's high blood pressure. (ECF No. 19-1 at 5.) However, in his verified opposition, plaintiff avers that he had high blood pressure prior to his first surgery by Dr. Giza, yet Dr. Giza still performed the surgery. (ECF No. 19-1 at 6.) Plaintiff avers that Dr. Windsor did not record that it was medically inadvisable to conduct the surgery in light of plaintiff's high blood pressure. (ECF No. 20 at 6.) Plaintiff avers that he went to U.C. Davis on or about July 24, 2015, and despite again having high blood pressure, Dr. Giza scheduled plaintiff's second surgery. (ECF No. 20 at 6.) In light of this evidence, plaintiff argues that Dr. Lankford was simply "fabricating an excuse" to deny plaintiff the much-needed surgery. (ECF No. 20 at 7.)

Thus, it appears that Dr. Giza recommended surgery a second time. Perhaps on summary judgment defendants Dr. Windsor and Dr. Lankford can adduce evidence that such surgery is elective, and their failure to provide the surgery does not constitute deliberate indifference, but simply a difference of medical opinion. However, at this juncture, plaintiff has alleged facts sufficient to demonstrate that their failure to provide the surgery interferes with the medical treatment recommended on two occasions by orthopedic surgeon Dr. Giza.

Moreover, it may be that on summary judgment, defendants can produce evidence demonstrating that defendant Dr. Lee reasonably relied on the medical opinion of Dr. Windsor in addressing plaintiff's appeals, or that plaintiff chose not to undergo surgery at the times Dr. Lee was reviewing such appeals. But given the above disputes of fact, the court is unable to find that Dr. Lee is entitled to dismissal on plaintiff's claim for surgery.

On the other hand, defendant Mahoney is entitled to dismissal on plaintiff's claim for surgery. In his complaint, plaintiff avers that defendant Mahoney "is involved," and was "personally put on notice that plaintiff was requesting surgery" based on plaintiff's appeals. (ECF No. 1 at 5.) However, in Dr. Mahoney's September 25, 2014 second level review response

1  to plaintiff's first appeal, Log No. HDSP HC 14028252, defendant Mahoney stated that plaintiff

2  was "seen by an orthopedic specialist and by U.C. Davis's Orthopedic Department as well," that

3  plaintiff has

> cartilage dysfunction and pain while ambulating[,] and the plan is for surgery again. You have been scheduled for a follow-up and your PCP is currently awaiting the report from U.C. Davis to review.

(ECF No. 19-1 at 21.) As to plaintiff's requested surgery, defendant Mahoney, a non-medical defendant, was entitled to rely on the orthopedic specialists and the records reflecting that plaintiff was scheduled for follow-up and that there was a plan for the surgery. In light of these medical records, there was nothing further that defendant Mahoney could do on September 25, 2014, to ensure that plaintiff received the surgery; thus, his ruling on the appeal does not demonstrate deliberate indifference. Indeed, plaintiff states that he was again seen by Dr. Giza on July 24, 2015, after defendant Mahoney's decision. Unlike defendant Dr. Lee, who was subsequently involved in plaintiff's second appeal, defendant Mahoney was not involved in addressing plaintiff's second appeal. (ECF No. 19-1 at 22-30.) Although plaintiff avers that his Log No. HDSP HC 14028473 put defendant Mahoney on notice, it was Dr. Swingle who issued the second level appeal response in appeal 14028473, not defendant Mahoney. (ECF No. 19-1 at 24.) Thus, plaintiff's claim against defendant Mahoney concerning the denial of surgery should be dismissed. Because defendant Mahoney, as a non-medical appeal reviewer, was entitled to rely on the doctor's opinions and medical records reviewed in connection with his appeal response addressing plaintiff's request for surgery, plaintiff is not granted leave to amend this claim. However, as set forth above, plaintiff's claim concerning inadequate pain medication remains viable as to defendant Mahoney.

VII. Qualified Immunity

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A qualified immunity analysis consists of two prongs: (1) whether the

facts as alleged by plaintiff establish a violation of a constitutional right, and (2) whether that right was clearly established given the state of the law at the time of the alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 232 (2009), citing Saucier v. Katz, 533 U.S. 194, 201 (2001).

Defendants assert qualified immunity based on their contentions that their conduct was in compliance with established law, and reasonable persons in their positions would believe their conduct was lawful. First, as explained above, taking plaintiff's allegations as true, a reasonable trier of fact could find that defendants violated plaintiff's rights under the Eighth Amendment, and disputes of fact preclude granting qualified immunity at this stage of the proceedings. Second, by 2014, it was clearly established that prison officials could not be deliberately indifferent to a prisoner's serious medical needs or deny, delay, or intentionally interfere with medical treatment for a prisoner's serious medical needs. See Estelle, 429 U.S. at 104-06; Hamilton, 981 F.2d 1066-68 (defendants not entitled to qualified immunity when they ignored orders of prisoner's prior physician). Here, the defendants were on notice that they could not be deliberately indifferent to plaintiff's serious medical needs, specifically his need for effective pain relief or, in the alternative, surgery to alleviate such pain. Thus, defendants' motion to dismiss on qualified immunity grounds should be denied.

VIII. Conclusion

Defendants' motion to dismiss should be granted as to plaintiff's claim that defendant Mahoney denied plaintiff surgery, but denied in all other respects.

Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court is directed to assign a district judge to this case; and

IT IS RECOMMENDED that:

1. Defendants' motion to dismiss (ECF No. 19) be granted as to plaintiff's claim that defendant Mahoney denied plaintiff surgery, but denied in all other respects; and

2. Defendants Dr. Windsor, Dr. Lankford, Dr. Lee and T. Mahoney shall file an answer to the complaint within fourteen days from any order by the district court adopting these recommendations.

////

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 4, 2016

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/woma0533.mtd